Walter J. Mahoney, J.
This is a proceeding under CPLB, article 78 requesting relief from a decision of the respondent.
Because of the novelty of the problem, an extensive recital of the facts seems necessary. They are as follows: Petitioner, a resident of the City of Buffalo and County of Erie, alleges that the Erie County Commissioner of Social Services failed to perform a duty enjoined upon him by the provisions of title 11 of article 5 of the former Social Welfare Law (now Social Services Law) to direct payment of certain medical expenses, and seeks to compel said respondent to direct payment in accordance with said law.
The following facts embodied in the petition are not controverted by any of the pleadings before this court:
On or about September 30, 1966, the petitioner suffered a sudden stroke, paralyzing his left side. As a result of this, he was rushed in an unconscious condition to Kenmore Mercy Hospital where he was attended by Dr. Anthony P. Santomauro who was called in on an emergency basis.
According to the petition, said doctor found that the petitioner’s right carotid artery was partially blocked requiring immediate surgery. Dr. Santomauro certified his condition as an emergency and on the same day the necessary surgical procedure was performed.
Subsequently, the petitioner was discharged from the hospital and continued under treatment by the same doctor.
Once again, on December 6, 1967, petitioner was again admitted under emergency circumstances to Kenmore Mercy Hospital because of a paralysis that had set in on the right half of his body. Once again, his case was certified as an emergency and an operation on the left carotid artery was performed by Dr. Santomauro.
Subsequently, petitioner received a statement from Dr. Santomauro for his services in the sum of $1,020.
According to the petition, this fee is in accordance with the relative value scale established by the Erie County Medical Society for surgery of this nature.
On or before November 1,1966, petitioner’s wife Norma made application to the Erie County Department of Social Welfare for medical assistance under title 11 of article 5 of the former Social Welfare Law (now Social Services Law) popularly known as Medicaid. After the usual processing, a Medicaid identification card was issued by said department, evidencing petitioner’s eligibility for Medicaid benefits.
Petitioner learned from Dr. Santomauro that he did not participate in the Medicaid program and would make no exception, *828 although he would co-operate in any application for benefits made by your petitioner directly. Subsequently, petitioner conferred with representatives of the Department of Social Welfare concerning this bill and was informed that unless the doctor completed a form known as K-243-A they would not be able to secure full or partial payment of said bill.
Petitioner consulted his attorney who, after conference with representatives of the Erie County Department of Social Welfare, submitted a formal claim to the proper division of said department dated July 5, 1967.
It is significant that the substance of the claim mentioned above requested that the department pay to the doctor the amount claimed for his services- to which petitioner claims he was entitled by way of Medicaid benefits, and since the doctor was not a participating physician in the Medicaid program, and had declined to complete or sign a K-243-A certificate, that such requirement he waived, and that the afore-mentioned application he accepted in lieu thereof.
Said application was rejected and the petitioner’s attorney requested a hearing as provided in section 366-a of the Social Services Law. Pursuant to such request, a hearing was conducted on October 31, 1967, before an appropriate hearing officer, appointed pursuant to statute by the State Department of Social Services. Subsequent to the afore-mentioned hearing, a decision was made by George K. Wyman, Commissioner of Social Services of the State of New York, dated March 18,1968, in which it was decided that denial of benefits sought by petitioner by the Erie County Department of Social Services was proper and that said decision should be affirmed.
It is significant that neither the pleadings nor the oral arguments of the respective attorneys indicate to the court any case law which they claim would be helpful in determining the present controversy.
The respondent, in opposing the petition, relies largely on section 367-a of the Social Services Law which provides as follows : ‘ ‘ Any payment with respect to any medical assistance shall be made to the person, institution, state department or agency or municipality supplying such medical assistance, except as otherwise permitted or required by applicable federal and state provisions, including the rules of the board and regulations of the department.”
The respondent further quotes from the Bulletin No. 182 of the State Department of Social Services (p. 28, item 2[a]) as follows: ‘1 Any payment with respect to any item of medical *829 care under medical assistance shall be made to the person or institution supplying such care.”
We should also bear in mind that Department of Social Welfare regulation 360.16 states: “ Any payment with respect to any item of medical care under medical assistance shall be made to the person or institution supplying such care ” (18 NYCRR 360.16[a]).
Bulletin No. 182 (p. 32, item L) states: “ Our agency’s position is that we cannot force a provider of services to submit a claim and we cannot process a payment without a claim. We also cannot reimburse the client.”
Bearing in mind the above applicable sections of law, we are here faced with an unusual and anomalous set of facts, which may be paraphrased as follows: Respondent is willing to pay the claim for the doctor’s services but contends that it is unable to do so because the doctor will not fill out and sign the appropriate form known as K-243-A.
This court believes and it is generally conceded that the Medicaid Program of this State was enacted for the benefit of the so-called medically indigent, and not for the convenience or emoluments which might flow to members of the professions generally lumped under the “ healing arts
The so-called Medicaid Program of this State embodied in title 11 of Article 5 of the Social Services Law in section 363 entitled “ Declaration of objects ” states as follows: “Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare and for promoting the state’s goal of making available to everyone, regardless of race, age, national origin or economic standing, uniform, high-quality medical care. In furtherance of such goal, a comprehensive program of medical assistance for needy persons is hereby established to operate in a manner which will assure a uniform high standard of medical assistance throughout the state. In carrying out this program every effort shall be made to promote maximum public awareness of the availability of, and procedure for obtaining, such assistance, and to facilitate the application for, and the provision of such medical assistance.”
To bring about the afore-mentioned desirable objectives, certain standards were necessarily set up by the State, both by statute and regulation.
However, this court finds nothing in the statute or the regulations which can subvert or pervert the intent of the Legislature in seeing to it that a qualified person, namely Louis Aroune, not be denied the benefits designed for him by the Legislature.
*830 It is true that any and all doctors may refuse to participate in said program, hut, in the opinion of this court, no doctor can deny a qualified person benefits to which he is entitled because of the doctor’s refusal, arbitrarily or otherwise, to sign the form prescribed by the regulations of the appropriate State Department.
Notwithstanding the doctor’s refusal to sign the appropriate form, he did furnish to the hearing officer an affidavit in which he stated, that, on September 30, 1966, he was called upon to perform emergency surgery on the petitioner and that the necessary surgical procedure was conducted. The affidavit of the doctor marked Exhibit A in petitioner’s pleadings is very extensive and justifies the reasonableness of the fees as based on the relative value scale established by the Erie County Medical Society for surgery of this nature.
The doctor’s affidavit further states (and is not denied) that he had no opportunity to discuss the matter of surgical fees with the patient prior to either of the surgical procedures found necessary. He states that the patient’s condition was extremely precarious and that patient was in a semiconscious condition when he first saw him. The doctor’s affidavit states further: “ he is not prepared, however, to execute any forms as a provider of services as required under the New York Medicaid Law, and specifically, your deponent declines and will continue to decline to execute the K-243-A provided him by the attorneys for Mr. Aroune ”.
On examination of the doctor’s affidavit by the court, it seems to provide the Department of Social Welfare with all the data it would ordinarily procure from the afore-mentioned form K-243-A and for the purposes of this proceeding the court elects to consider said affidavit equivalent to the afore-mentioned form which the Welfare Department claims is sine qua non without which it cannot make the award sought.
While governmental agencies just as the court must be bound by the law, there are occasions in which the substance of the matter under consideration must take precedence over bureaucratic forms and regulations which seem to have no objective other than to proliferate the requirements before certain benefits may be paid to those entitled to them.
We are not here considering the merits or demerits of the so-called Medicaid Program. We are faced with but one simple consideration: namely, can benefits be denied solely because a doctor, who chooses not to become part of the Medicaid Program, declines to sign the K-243-A form.
*831 The decision of Commissioner Wyman (Exhibit 0 attached to petitioner’s pleadings) is quite significant. He finds as follows: (1) Appellant (petitioner) applied for medical assistance on November 1,1966, and was determined to be eligible effective that date. (2) In October, 1966, appellant underwent surgery. The unpaid bill due to the surgeon, Dr. Anthony Santomauro, $1,020. (3) The doctor is not a participant in the Medicaid Program and has refused to submit a bill to the agency for Ms services. He has submitted a bill to the appellant. However, the bill submitted to the appellant does not have all of the information required for billing under section 540.7 of the Regulations of the State Department of Social Services (18 NYCRR 540.7). (4) The agency refused to authorize payment of tMs bill because of failure to comply with billing requirements. The Commissioner further states that “It is clear that the Medicaid program does require vendor payments.” Despite all of the foregoing, the following language of the Commissioner’s decision is extremely sigmficant: “The appellant (petitioner) is correct in contending that there is no requirement that a bill is submitted to the agency on a particular form prepared by the agency.”
In view of the foregoing language of the Commissioner, it is particularly appropriate, in the opinion of tMs court, that the doctor’s affidavit be considered the equivalent of the prescribed form wMch the doctor has refused to execute. Since, according to the Commissioner, there is no requirement that a bill be submitted on a particular form prepared by the agency, it would seem irrefutable that the doctor’s affidavit should be considered the equivalent of the required form and that payment be authorized.
When we consider the billions of dollars now being expended on social welfare programs, many of wMch have come under extreme criticism by experts in the field of sociology and political science, it is indeed strange that the modest sum sought here is denied by the department because of the doctor’s refusal to sign the appropriate claim or form.
In view of the foregoing, it is the opimon of the court that the doctor’s affidavit shall be considered in lieu of suggested form and be the equivalent thereof.
Tn conclusion, we must bear in mind that many of the material allegations of the petitioner’s papers are not denied by the respondent.
Therefore, in the interests of justice and as a matter of law, the respondent is ordered to pay to Dr. Santomauro the sum of $1,020.